UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**JACOB JULICK**        **PLAINTIFF**

**v.**        **CIVIL ACTION NO. 5:23-cv-51-BJB**

**SCOTT JORDAN et al.**        **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Jacob Julick filed a 42 U.S.C. § 1983 complaint (DN 1), a motion for a temporary restraining order (TRO) (DN 5), and a motion for a "temporary injunction" (DN 6), which the Court interprets to be a motion for preliminary injunction. His motions request transfer from the Kentucky State Penitentiary (KSP), where he is incarcerated. DN 5; DN 6, p. 1. The Court denies each of the motions.

### I. ALLEGATIONS

Plaintiff sues KSP Warden Scott Jordan; KSP Officers Jason Denny, Dylan Bond, and Delvin Nielsen; and KSP Unit Administrator Lauren Massey. DN 1, pp. 2-3.

**1. December 25-26, 2022.** Plaintiff's first claim states that he was "taken to the hole for an incident that I was not involved in and placed under [internal affairs] investigation," where he was put in the "strip cage" and made to wear only paper boxers. *Id*. at 4-5. He alleges that on December 26th he told a non-Defendant officer that the cold cell, lack of clothes or blankets, lack of heat, and below-freezing temperatures had made him suicidal. *Id*. He allegedly told this to Defendant Denny, who laughed and told him "to kill myself and do them a favor." *Id*.

According to the Complaint, a non-Defendant officer made Plaintiff get on his knees and face the wall while handcuffed and shackled inside the "strip out cage." *Id*. Plaintiff alleges that for the next 45 minutes Defendant Nielsen watched him and kept opening the nearby door to the

outside, asking if he "wanted some fresh air." *Id*. He further alleges that Defendant Bond then "aggressively" told him to face the wall and sprayed him with oleoresin capsicum (OC) or pepper spray; when Plaintiff asked him if he was proud of himself, Defendant Bond sprayed him again. *Id*. Plaintiff states that at that point Defendant Bond pulled out his taser, pointing it at his head (but not actually tasing him). *Id*. at 5.

Plaintiff alleges that he stayed in the same position for 20-30 minutes until a nurse decontaminated him by pouring a pitcher of water on his head; but she gave him only a wet towel, so he was not able to dry off. *Id*. Plaintiff further alleges that Defendant Nielsen again opened the outside door "laughing [and] asking if I want some fresh air." *Id*. According to Plaintiff, he stayed in that position for 30-45 minutes, shivering and shaking until his feet and legs went numb. *Id*.

Plaintiff states that he later was given a disciplinary charge for "trying to spit on Dylan Bond," which he denies, but the disciplinary charge was later amended to "disobeying a direct order." *Id*.

Plaintiff alleges that he had "to see mental health over this because I am always scared that another incident like this will occur." *Id*. He explains that on March 10, 2023, Defendant Bond apologized to him, telling Plaintiff that "he was wrong and just in his feelings that day." *Id*.

**2. December 25, 2022–January 4, 2023.** Plaintiff's second claim alleges that he was harassed by Defendant Denny. *Id*. at 6. He states that every morning Defendant Denny made him lay face down on the floor while he was searched. *Id*. He further states that he was kept for ten days in only paper boxers in the cold with no showers, opportunity to brush his teeth, or cleaning supplies in a cell with dirt and feces on the floor. *Id*.

## II. REQUESTED RELIEF

The Complaint asks for monetary and punitive damages and transfer to another prison facility. *Id*. at 9. An attached affidavit (DN 1-2) avers in pertinent part that Plaintiff fears "that more retaliation and abuse with injury pain and suffering is going to happen. This is a constant ongoing issue here at K.S.P." DN 1-2, p. 2. He further avers that once Defendants learn that he has filed suit and a TRO motion, "I'm positive the same kind of pain and suffering, cruel punishment, and retaliation will continue and become even worse. As it has already happened in the past, and nothing is going to prevent it from happening again without a TRO." *Id*.

The TRO motion asks the Court to enter an order "to prevent myself from suffering immediate and irreparable injury. I have suffered physical and mental abuse in violation of the 8th Amendment." DN 5, p. 1. He states that he seeks a "temporary injunction" for "an immediate end [to] be brought to the torture, abuse, retaliation and unnecessarily prolonged confinement in isolation without due process of law." DN 6, p. 1 (cleaned up). Plaintiff continues, "I have been suffering irreparable injury by staff's misuse of force and excessive force by being sprayed multiple times and a taser drawn to my back inside a locked strip-out case, handcuffed and shackled, refused showers, clothes, reasonable safety and warmth." *Id*. (cleaned up).

Plaintiff's preliminary-injunction motion asserts: "My right to reasonable safety has been ignored and no one here comes to put a stop to it. I am certain I will continue to suffer irreparable and immediate injury if a transfer and the injunction is not granted." DN 6, p. 2. He attaches a number of exhibits including several grievances regarding the incidents detailed in his Complaint, a copy of a disciplinary report concerning December 26, 2022, charging him with attempting to spit on Defendant Bond, a document reflecting that his charge was reduced by

Defendant Jordan to "disobeying an order," a copy of a mental health examination from February related to the incidents in the Complaint, and affidavits from seven inmates in support of various aspects of Plaintiff's allegations. DN 6-1. The other inmates' affidavits assert that beginning on December 25, 2022, the whole cellhouse (including Plaintiff) was placed on lockdown in response to an incident occurring outside of that building, and as a result all inmates in the cellblock were denied a shower or a toothbrush for over a month and that Plaintiff was not the only inmate required to wear paper boxers, lie down on the cold floor during searches, and suffer cold conditions without clothes or blankets. *See, e.g.*, *id*. at 39 (Affidavit of Sy'Ron Venerable); *id*. at 40 (Affidavit of Reginald Grider, Jr.).

### III. LEGAL STANDARD

Both a preliminary injunction and a TRO are extraordinary remedies "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1011 (6th Cir. 2006). "In deciding whether to grant a preliminary injunction, a court weighs four factors: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Tippins v. Washington*, No. 20-1480, 2021 WL 3700574, at *3 (6th Cir. Apr. 20, 2021) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr.*, 878 F.3d 524, 527 (6th Cir. 2017). The movant carries the burden of persuasion, and the proof required to obtain a

preliminary injunction exceeds that required to survive a summary-judgment motion. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "The Court applies the same standard to a motion for a temporary restraining order . . . as to a motion for a preliminary injunction." *W. Mich. Family Homes LLC v. United States Dep't of Agric.*, No. 1:13-CV-1277, 2013 WL 12109437, at *1 (W.D. Mich. Nov. 26, 2013) (citing *Summit Cnty. Democratic Cent. & Exec. Comm'n v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004)).

This already stringent burden is even more difficult to meet where, as in this case, a plaintiff seeks an injunction not merely to maintain the status quo pending resolution of the case but to obtain affirmative relief--here, transfer to another prison. As the Supreme Court has explained, the purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Motions seeking to obtain affirmative preliminary injunctive relief must be more closely scrutinized than the already-disfavored motion for preliminary junction which seeks to maintain the status quo. *See, e.g.*, *Russell v. Tribley*, No. 2:10-CV-14824, 2011 WL 4387589, at *10 (E.D. Mich. Aug. 10, 2011), *report and recommendation adopted*, No. 10-CV-14824, 2011 WL 4396784 (E.D. Mich. Sept. 21, 2011) (citing *Schrier v. Univ. of Colo.* 427 F.3d 1253, 1259 (10th Cir. 2005), and *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988)); *Doe v. Tennessee*, No. 3:18-CV-0471, 2018 WL 5313087, at *4 (M.D. Tenn. Oct. 26, 2018), *report and recommendation adopted*, No. 3:18-CV-00471, 2018 WL 6181349 (M.D. Tenn. Nov. 27, 2018).

### III. ANALYSIS

#### A. Success on the merits

In its prohibition of "'cruel and unusual punishments,'" the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against

prisoners and also "must provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Complaint has not undergone the prescribed initial review required by the Prison Litigation Reform Act to determine, among other things, if it states a claim on which relief may be granted. *See* 28 U.S.C. § 1915A. Even assuming it states a claim for an Eighth Amendment violation, however, merely surviving a pleading standard doesn't equate to a likelihood of success on the merits. That requires a preliminary factual showing more stringent than the proof required to survive a motion for summary judgment. *See Leary*, 228 F.3d at 739. Here, Plaintiff's affidavit offers only speculation about possible future harm and no basis to believe that retaliation is a realistic threat. It does not offer factual support of the kind necessary to survive a summary-judgment motion—much less to support the relief Plaintiff requests. *See generally* Fed. R. Civ. P. 56 (summary-judgment rule). Regardless, the motions for injunctive relief fail based on the remaining three factors. "Even where success on the merits is shown . . ., injunctive relief is 'an extraordinary remedy never awarded as of right.'" *Swain v. Parris*, No. 3:22-CV-338, 2022 WL 16542574, at *3 (E.D. Tenn. Oct. 28, 2022) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

### B. Irreparable injury

Plaintiff has not made the required showing of irreparable injury. Injunctive relief should not issue when, like here, the claimed harm is "speculative or may never occur." *See Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003) (quotations omitted). Instead, a plaintiff must show harm that is not remote or speculative, but is "actual and imminent," *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (quotations omitted), and the injury must be of "such imminence

that there is a clear and present need" for relief in order to prevent harm. *See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotations omitted).

Plaintiff speculates, without factual support, that harm will occur to him once Defendants know about this suit: "My right to reasonable safety has been ignored and no one here comes to put a stop to it. I am certain I will continue to suffer irreparable and immediate injury if a transfer and the injunction is not granted." DN 6, p. 2. The factual basis for his expectation is unclear. And the facts he does marshal undermine this position: the conditions he fears took place during a cellhouse-wide lockdown caused by an incident in another area of the prison. *See, e.g.*, DN 6-1, p. 39-40. The affidavits Plaintiff attaches indicate that all of the inmates in his cellhouse were similarly affected. *See id.* He offers no reason to believe that he will be singled out and subjected to similar treatment in the near future—at least not because of retaliation for this lawsuit—or that any future widespread restrictions would be imposed on a pretextual or unlawful basis.

## C. Substantial harm to others and the public interest

Both of these prongs also weigh against granting Plaintiff's motions for TRO and preliminary injunction.

Plaintiff requests a transfer to another prisoner, but he has no constitutional right to placement in any particular prison. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). "Any interference by the federal courts in the administration of state prison matters is necessarily disruptive." *Mitchell v. Schroeder*, No. 2:21-CV-00109, 2023 WL 2394422, at *2 (W.D. Mich. Feb. 3, 2023), *report and recommendation adopted*, No. 2:21-CV-109, 2023 WL 2388113 (W.D. Mich. Mar. 7, 2023); *see also Preiser v.*

*Rodriguez*, 411 U.S. 475, 491-92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."). Plaintiff's requested relief of a transfer would be particularly disruptive. *See, e.g.*, *Brooks v. Dillow*, No. 1:15-CV-812, 2016 WL 3264390, at *2 (S.D. Ohio May 16, 2016) ("The temporary restraining order that Plaintiff seeks in this case would significantly interfere with prison administration by requiring the transfer of Plaintiff to another institution. Thus, the public interest disfavors issuance of the TRO directing Plaintiff's transfer to another institution[.]"), *report and recommendation adopted*, No. 1:15-CV-812, 2016 WL 3360526 (S.D. Ohio June 14, 2016). "Indeed," decisions of this court have held that "a federal court only has the authority to order a State to transfer a prisoner in the rare and extreme situations where an inmate's life is in imminent or grave danger." *Henson v. Daviess Cnty. Detention Ctr.*, No. 4:16-cv-169, 2017 WL 891299, at *2 (W.D. Ky. Mar. 6, 2017) (collecting cases).

## IV. CONCLUSION AND ORDER

Plaintiff has not carried his burden to show that circumstances clearly demand preliminary injunctive relief, especially in light of the fact that the affirmative preliminary injunctive relief he seeks is particularly disfavored. For the foregoing reasons, the Court **DENIES** Plaintiff's motions (DNs 5 and 6)

Date:

cc:     Plaintiff, *pro se*
        Defendants
B213.009

8