UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

JACOB JULICK                                                                                     PLAINTIFF

v.                                     CIVIL ACTION NO. 5:23CV-P51-JHM

SCOTT JORDAN *et al.*                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants Scott Jordan, Jason Denny, Dylan Bond, and Sasha Primozich Villasenor.[1,2] (DN 43). Plaintiff Jacob Julick, proceeding *pro se*, filed a response to the motion (DN 49), and Defendants filed a reply. (DN 59). For the following reasons, the motion for summary judgment will be granted.

**I.**

Plaintiff is an inmate at Kentucky State Penitentiary (KSP). In the superseding amended complaint (DN 22), signed under penalty of perjury, Plaintiff alleged that he was placed in the "hole" on December 25, 2022, and made to wear paper boxes and walk barefoot on wet and cold concrete. (DN 22, PageID#: 141). He asserted that on the following day, December 26, 2022, he told officers that he was suicidal and was taken to a strip cage where he was handcuffed and shackled and told to kneel down and face the wall. (*Id.*). Plaintiff stated that after being there under watch for 45 minutes Defendant Bond "comes up and aggressively tells me to face the wall he pulls out his OC spray and sprays me." Plaintiff stated, "I continue to turn my head, but never make any motion toward him or stop facing the wall with my body. I only turn my head I try to

---

[1] The motion was also filed on behalf of Defendant Lauren Massey. However, after the motion was filed, the Court entered a Memorandum and Order granting Plaintiff's motion to dismiss Massey from the case (DN 53). As such, the Court will omit references to Massey herein.

[2] Plaintiff named Sasha Primovich as a Defendant in the superseding amended complaint (DN 22). Defendants identified this Defendant as "Sasha Villasenor (formerly Primozich)" in their waiver of service (DN 28) and refer to this Defendant as Villasenor in their motion for summary judgment. For ease of reference, the Court will refer to her as Defendant Villasenor herein. The Court will also direct the Clerk of Court to change her name in the docket sheet.

laugh it off and I ask him if hes proud of his self he tells me to stop talking and face the wall, then he spray me ag[ai]n." (*Id.*). Plaintiff maintained that he "was still in hand cuffs and shackles on my knees inside a locked cage facing the wall with my body." (*Id.*, PageID#: 142).

Plaintiff further asserted that he received a disciplinary write up for trying to spit on Defendant Bond, which was "drop[ped]" to charge for "violent demonstration" and later, after he appealed, was amended to "disobeying a direct order." He stated, "I never tried to spit on Dylan Bond. (*Id.*). Plaintiff also stated that Defendant Bond apologized to him in front of two other officers "stateing he was wrong and just in his feelings that day." (*Id.*).

In addition, Plaintiff made allegations regarding his conditions of confinement from December 25, 2022, to January 4, 2022, when he was housed in the Restricted Housing Unit (RHU). (*Id.*, PageID#: 143). Plaintiff stated that Defendant Denny searched his cell every morning and made Plaintiff "lay face down on [his] stomach in paper boxes, barefoot, freezing, and shivering." (*Id.*). Plaintiff also alleged that he had no clothes, blankets, sheets, or shoes and was denied a shower and the ability to brush his teeth for the 10 days he was in the RHU. (*Id.*). He also alleged that his cell "had feces on the floor and walls, I was made to walk barefoot in this cell with dirt and feces caked to my feet." (*Id.*). He alleged that Defendant Denny denied him "cleaning supplies, denied me a shower, clothes, and a safe, and warm environment." (*Id.*). He stated that he later met with a mental health provider and is now taking medication for anxiety disorder. (*Id.*). Plaintiff asserted that Defendants Denny and Villasenor were responsible for these conditions of confinement. Plaintiff also stated that officers told him he was "being treated like this under the Warden Scott Jordan's firm orders." (*Id.*, PageID#: 144).

As relief, Plaintiff sought compensatory and punitive damages and injunctive relief.

Upon initial review of the above allegations pursuant to 28 U.S.C. § 1915A, the Court allowed an Eighth Amendment excessive-force claim to proceed against Defendant Bond in his individual capacity and an Eighth Amendment conditions-of-confinement claim to proceed against Defendants Jordan, Denny, and Villasenor in their individual capacities.[3]  (DN 23).

**II.**

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive-force claim because Plaintiff cannot meet the subjective or objective component required to state such a claim.  Defendants maintain that Plaintiff was believed to be involved in a violent assault on a corrections officer on December 25, 2022, and that he was transferred to the RHU, "classified as 'maximum assault status,' placed on property restrictions, his standard-issue prison clothing was taken, and he was provided only suicide prevention clothing (e.g., 'paper boxers') and a mattress." (DN 43, PageID#: 225-26) (citing DN 43-3, Extraordinary Occurrence Rpt. No. KSP-2022-12-100; DN 43-2, 12/25/22 Behavioral Control Form).

Defendants report that on December 26, 2022, Plaintiff made statements to staff indicating that he was going to harm himself.  (*Id.*, PageID#: 226) (citing DN 43-4, 12/26/2022 Behavioral Control Form).  They state that because of this "Julick's cell was stripped, and he was again permitted only a mattress and suicide prevention clothing, and additionally placed on one-on-one observation until Julick could be seen by mental health staff." (*Id.*) (citing DN 43-4).  They report that, while Plaintiff's cell was being stripped, he was placed in mechanical restraints and placed in

---

[3] The Court dismissed Plaintiff's official-capacity claims and claims based on alleged verbal abuse, false disciplinary charges, and the grievance procedure under § 1915A.  (*Id.*).  The Court did not include the allegations related to the dismissed claims herein.

3

a holding cell, or "strip cage." (*Id.*) (citing DN 43-5, Extraordinary Occurrence Rpt. No. KSP-2022-12-106 at p. 1; DN 43-6, Disciplinary Rpt. No. KSP-2023-0001813 at p. 1).

Defendants assert that while Plaintiff was in the strip cage he was being monitored by a corrections officer and was ordered to remain in a kneeling compliance position. (*Id.*) (citing DN 43-6, p. 2). They maintain that Defendant Bond entered the area of the strip cage to take over the monitoring of Plaintiff and ordered Plaintiff to "face the back wall of the strip cage and remain silent." (*Id.*). According to Defendants, Plaintiff disregarded this order. (*Id.*) (citing DN 43-6, p. 1-2.). Defendants cite the video of the incident and argue that Plaintiff "continued to turn his head and disobey orders from Bond." (*Id.*) (citing Institutional Video at 0:30 – 0:36 [filed under seal at DN 41]). They state that Defendant Bond believed that Plaintiff was preparing to spit on him and that, "[t]o prevent Julick from engaging in a perceived attempt at staff assault, Bond issued the first of three short bursts of OC spray." (*Id.*, PageID.226-27 (citing Institutional Video at 0:37 – 40).

Defendants report that after Defendant Bond deployed OC spray, a cell entry team was assembled, and they removed Julick from the strip cage to be decontaminated. (*Id.*, PageID#: 227) (citing DN 43-5 at p. 1). They also assert that Defendant Boyd filed a disciplinary report charging Plaintiff with a violation for attempting a staff assault and that the charge was later reduced by Defendant Jordan to "disobeying a direct order." (*Id.*) (citing DN 43-6; DN 33).

Defendants argue that Plaintiff cannot meet the subjective component of an Eighth Amendment excessive-force claim because the need for the application of force was Plaintiff's admitted refusal to follow orders when Defendant Bond instructed him the face the rear wall of the strip cage and Defendant Bond's impressions that Plaintiff was about to spit on him. (*Id.*, PageID#: 230). They maintain, "While in hindsight Julick might not have tried to spit on Bond, it

4

was plausible that Bond believed both that Julick would spit and that force was necessary to stop him." (*Id*., PageID#: 231). Defendants also argue, "The amount of force used by Bond was the least amount of force he was able to use under the circumstances—three short bursts of OC spray, the cumulative duration of which was less than two seconds." (*Id*.). They further assert that Plaintiff fails to demonstrate any physical injury. (*Id*., PageID#: 232). Defendants also argue that Plaintiff cannot meet the objective component of an excessive-force claim because there is not evidence that Defendant Bond acted maliciously or sadistically and Plaintiff claims no physical injuries. (*Id*., PageID#: 233).

Moreover, Defendants assert that Plaintiff's claims concerning his conditions of confinement fail to meet the objective or subjective components of an Eighth Amendment claim. (*Id*.). They argue that Plaintiff offers no affirmative evidence of his claims regarding his conditions and that, even if of the alleged conditions existed, the limited duration of his exposure to the alleged conditions is not enough to rise to the level of a constitutional violation. (*Id*., PageID#: 235).

Defendants further maintain that they are entitled to qualified immunity on the excessive-force and conditions-of-confinement claims because Plaintiff has failed to show a violation of his constitutional rights as to either claim. (*Id*., PageID#: 236-37).

In Plaintiff's response (DN 49), he argues that he was not involved in the staff assault and that Defendants' claim that he was involved is a "manipulation tactic by Defendants to gain favor with the Court." (DN 49, PageID#: 326). He states that it is undisputed that he was in his cell at the time of the attack on the staff member and was not involved in the assault. (*Id.*). He states that he was not put in the RHU "because of his participation in the assault but because of his affiliation with the STG group who allegedly assaulted a staff member with a weapon." (*Id*., PageID#: 327).

5

Plaintiff further states that Defendants' argument that he appeared to be accumulating saliva in his mouth is "flawed, because it is no more than a guessitimation of Defendant Bond opinion." (*Id.*, PageID#: 328). He continues as follows:

> The institutional video specifically 0:37-0:42 depicts the trigger on Defendant Bond was depressed three times. OC spray will make any one turn their head because of how strong it is, and the smell that is produces with burn. The fact that Defendant Bond stating fear being spit on, is a shallow attempt to justify the spraying of Plaintiff Julick three times, even though he posed no threat to Defendant Bond, as Plaintiff Julick was behind a locked strip cage, shackled by hands, ankles and on his knees, and hereby objects that Defendant Bond facts are not supported by admissible evidence.

(*Id.*).

Plaintiff also argues that he "has met the requirement for the 'extreme deprivations' for the condition of confinement claim under the Eighth Amendment." (*Id.*, PageID#: 328-29). He states, "Living in feces for nine days, breathing it (the ordor), walking in it (dried) being forced to sleep around it, not only is it unsanitary, but its clearly cruel and unusual punishment . . . ." (*Id.*, PageID#: 329). He also asserts, "And living in those conditions without a shower for 10 days or cleaning supplies is inhumane, the video footage from 12-25-22 supports this all the way to 1-4-23, but still has not been provided by the defendants." (*Id.*).

In their reply (DN 59), Defendants argue that Plaintiff "has not adequately provided justification for alleging that the Defendants' actions were unnecessary, particularly considering the violent incident that occurred on December 25, 2022." (*Id.*, PageID#: 362). They state that during the incident "a staff member was viciously assaulted (stabbed 13 times and stomped) by a group of inmates identified as a Security Threat Group ('gang'), of which the Plaintiff was a member." (*Id.*). Defendants assert as follows:

> This scenario unfolds against the backdrop of the 12/25/2022 brutal assault on a staff member, which required the victim to seek hospital treatment for three (3) days, merely to reach a state of stability sufficient for discharge. [Ex. 9, 12/25/2022

> Behavioral Control Form at p. 2; Ex. 5, Denny Affidavit at p. 1; Ex. 8, Bond Affidavit at p. 1; Ex. 10, Thompson Affidavit at p. 2]. Not only does this highlight the gravity of the situation, but it also underscores the need for strict adherence to established protocols for the safety of both staff and inmates. [Ex. 4 Extraordinary Occurrence Rpt. No. KSP – 2022-12-098].

(*Id.*).

With regard to Plaintiff's conditions-of-confinement claim, Defendants argue that Plaintiff did not sustain a physical injury from the conditions, which "precludes the finding of an objectively serious deprivation." (*Id.*, PageID#: 366). They assert, "The precedent focuses on the provision of adequate food, shelter, clothing, and medical care. . . . Here, it is acknowledged that the Plaintiff experienced suicidal ideations, which justified the requirement for him to wear only boxers to prevent self-harm." (*Id.*, PageID#: 366-37) (citing Ex. 6, Extraordinary Occurrence Report No. KSP–2022-12-106 at p. 1, 4; Ex. 16, 12/26/2022 Behavioral Control Form at p. 1; and Ex. 7, Disciplinary Report No. KSP-2023-0001813 at p. 1). Defendants also argue that Plaintiff has not substantiated his allegations with any affirmative evidence and maintain that the duration of the alleged conditions does not support a constitutional violation. (*Id.*, PageID#: 367)

**III.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted).

## IV.

### A. Excessive-force claim against Defendant Bond

Under the Eighth Amendment, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The ban on cruel and unusual punishments prohibits the "'unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Sixth Circuit recently set forth the Eighth Amendment excessive-force standard as follows:

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even

8

harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

. . . .

As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See [Hudson v. McMillian*, 503 U.S.*]* at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam) (quoting *Hudson [v. McMillian]*, 503 U.S. at 7). Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment. *See Hudson [v. McMillian]*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023). The court further explained:

To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson [v. McMillian]*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin*, 604 F.3d at 954.

*Id.* at 618.

The Court has carefully reviewed the video evidence produced by Defendants. The video, which contains no sound, shows Plaintiff kneeling with his back to the door of the strip cage and Defendant Bond observing him directly outside the door. Plaintiff immediately turns his head to his left with a smile on his face visible to the camera and then turns his head and upper body to his

right. Although the camera is facing the back of Plaintiff's head, it is evident from the movement of his head that he is talking, and he repeatedly turns his head to the right. Defendant Bond is seen speaking to Plaintiff. Plaintiff turns his head to the right and shakes his head back and forth. The video shows Defendant Bond observing this behavior for twenty-five seconds before he removes a can of OC spray from his belt and points it toward the back of Plaintiff's head and speaks to Plaintiff. He holds the can of OC spray for approximately five seconds while Plaintiff can be seen turning his head to the right. Defendant Bond then shoots an approximately one second burst of OC spray burst and a second shorter burst on the back of Plaintiff's head and neck. The video shows Plaintiff's head continue to move and Plaintiff continue to speak and approximately eleven seconds after the second burst he turns his head to the right, and Defendant Bond sprays another one second burst of OC spray on the back of Plaintiff's head and neck. The video shows Plaintiff continue to move his head, and Defendant Bond then draws his taser and points it at Plaintiff but does not deploy his taser. Approximately eleven minutes after the last burst of OC spray, Plaintiff is removed from the strip cage and taken to be decontaminated by Defendant Bond and two other officers.

### 1. *Objective component*

The objective component of establishing an excessive-force claim requires the prisoner to prove that "sufficiently serious" pain was inflicted. *Williams v. Curtin*, 631 F.3d at 383. "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Hernandez v. Simmons*, No. 19-5344, 2020 U.S. App. LEXIS 29233, at *1-2, 7 (6th Cir. Sept. 14, 2020) (affirming entry of summary judgment where the inmate alleged that "the chemical agents burned his eyes and skin and 'melted' his contact lenses to his eyes, causing his eyes to bleed when he

removed his contact lenses" finding that the alleged injuries did not meet the objective component). The use of pepper spray or mace to control a prison inmate is not malicious or sadistic, per se. *Id.* (citing *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). "Even where a suspect does not actively resist, an excessive-force claimant must show something more than de minimis force." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at *7-8 (quoting *Hudson v. McMillian*, 503 U.S. at 9-10).

Here, Plaintiff does not allege that he sustained any injury "other than the infliction of pepper spray itself." *Garcia v. Geo Grp., Inc.*, No. 3:22cv1400-TKW, 2023 U.S. Dist. LEXIS 233289, at *9 (N.D. Fl. Dec. 19, 2023) (granting summary judgment, in part, finding that pepper spray causes only temporary discomfort). "Although exposure to OC spray is certainly unpleasant, it typically does not rise above the level of 'de minimis and temporary discomfort.'" *Pullen v. Tabor*, No. 1:20-cv-00050, 2024 U.S. Dist. LEXIS 143758, at *31 (S.D. Ohio Aug. 13, 2024) (quoting *Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-CV-00756, 2019 U.S. Dist. LEXIS 175068, at *15 (S.D. Ohio Oct. 9, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 23308 (S.D. Ohio Feb. 11, 2020)). The Court finds that Defendant Bond's use of pepper spray on Plaintiff was not the sort of force "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. at 9-10.

For this reason, the Court finds that Plaintiff has failed to present a genuine issue of material fact with regard to the objective component of an excessive-force claim.

11

### *2. Subjective component*

To decide whether Plaintiff meets the subjective component of an Eighth Amendment claim, the Court turns to the factors identified by the Sixth Circuit in *Johnson v. Sootsman*, the first being the extent of Plaintiff's injury. As stated above, Plaintiff's injury from the OC spray amounted to temporary discomfort, which weighs against Plaintiff meeting the subjective prong.

As to whether the nature of the threat justified the use of force, there is no dispute that Defendant Bond ordered Plaintiff to face the wall. The video evidence shows Plaintiff repeatedly turning his head toward Defendant Bond before each of the bursts of OC spray. While the video contains no sound and does not reveal what Defendant Bond was saying to Plaintiff before deploying the OC spray, in his affidavit, Defendant Bond averred, "During my interactions with Plaintiff Julick on December 26, 2022, I repeatedly issued explicit orders for him to face the wall. These instructions were essential for maintaining order and ensuring the safety of everyone involved during the transfer process." (DN 58-8, PageID #: 500). He further averred, "Continuing to monitor the Plaintiff's actions of 12/26/2022, it became clear that Plaintiff Julick was turning his head toward me, exhibiting the combative behavior. My repeated orders for him to turn and face the wall went unheeded, and he remained non-compliant." (*Id.*, Page ID # 501). Defendant Bond also stated in his affidavit that he made the decision to deploy pepper spray "to ensure compliance from the Plaintiff." (*Id.*). Moreover, Plaintiff does not dispute that he was turning his head. In the superseding amended complaint, Plaintiff stated "I continue to turn my head, but never make any motion toward him or stop facing the wall with my body. I only turn my head I try to laugh it off and I ask him if hes proud of his self he tells me to stop talking and face the wall, then he spray me agian." (DN 22, PageID #:141).

12

The parties debate whether it was reasonable for Defendant Bond to believe that Plaintiff was preparing to spit on him. However, the Court need not address this issue because it finds that Plaintiff's repeated failure to comply with Defendant Bond's orders to face the wall demonstrates that Defendant Bond did not use the force "maliciously and sadistically to cause harm" but did so in a "good-faith effort to maintain or restore discipline" for an inmate who was disobeying his orders. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (summary judgment granted where videotape squarely demonstrates that inmate disobeyed repeated direct orders prior to the use of pepper spray); *Siggers v. Renner*, 37 F. App'x 138 (Table) (6th Cir. 2002) (summary judgment was properly granted in favor of corrections officers who used pepper spray on inmate because they reasonably perceived inmate's refusal to leave a strip cage as a threat to prison security).

The Court next turns to whether the amount of force used was proportional to the threat. The video shows Plaintiff repeatedly turning his head toward Defendant Bond and shows Defendant Bond spray three bursts of pepper spray lasting no more than three seconds cumulatively on the back of Plaintiff's head and neck. Based on this video evidence, the Court finds that the force used by Defendant Bond was reasonable and proportional to gain Plaintiff's compliance with his orders. *See Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999) (Table) (affirming dismissal for failure to state a claim where inmate alleged corrections officer sprayed him with mace on the back of his body while handcuffed where inmate "was threatening and uncooperative throughout the [use of force] incident").

The final factor identified in *Sootsman* is whether the officer took any actions designed to reduce the amount of force used. The video evidence shows Defendant Bond observing Plaintiff's behavior for approximately twenty-five seconds before he drew his can of OC spray and pointing

13

it in Plaintiff's direction for five seconds to warn him before releasing a less-than-one-second burst and second even shorter burst to the back of Plaintiff's head and neck. The video shows Defendant Bond pointing the can of OC spray at Plaintiff for another eleven seconds while Plaintiff turned his head before shooting a third less-than-one-second burst of OC spray. The Court finds that the video evidence shows that Defendant Bond warned Plaintiff to obey his orders by pointing the can of OC spray at him before shooting the three bursts of OC spray, which cumulatively lasted less than 3 seconds. Moreover, after Plaintiff was sprayed, the video shows that he was removed from the strip cage approximately eleven minutes later to be decontaminated. The Court finds that this factor also weighs in favor of finding Defendant Bond's use of force was not done "maliciously and sadistically to cause harm."

For the foregoing reasons, the Court finds that Plaintiff has not demonstrated a genuine issue of material fact as to the subjective component of an Eighth Amendment excessive-force claim. Therefore, the motion for summary judgment will be granted as to this claim.

### *B. Conditions-of-confinement claim against Defendants Jordan, and Villasenor*

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834, 825 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 516, 517 (1984)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. at 9.

An Eighth Amendment conditions-of-confinement claim has an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To state a conditions-of-confinement claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component) and (2) that the defendant prison official has a "sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety (the subjective component). *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Certain conditions "may be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 687 (1978). Courts should examine "the interrelationship between the severe conditions and their duration, coupled with any other relevant evidence in the record." *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

The Court need only address the objective component to determine whether summary judgment is warranted on the conditions-of-confinement claim. With regard to Plaintiff's allegations that he was made to wear paper boxers, that the cell was freezing, that he had no clothes, blankets, sheets, or shoes, and that he was denied a shower and the ability to brush his teeth during the ten days he was housed in the RHU, accepting the allegations as true, Plaintiff has failed to establish a genuine issue of material fact with regard to the objective component. *See, e.g.*, *Watison v. Perry*, No. 23-5059, 2024 U.S. App. LEXIS 3674, at *6 (6th Cir. Feb. 15, 2024) (nine days in segregation in a cold cell with no bedding or change in clothing not so severe as to violate the Eighth Amendment); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("the

15

deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment"); *Keltner v. Cook*, No. 3:16-CV-179-TA, 2017 U.S. Dist. LEXIS 87084, at *5-6 (E.D. Tenn. Dec. 11, 2024) (six-day period in a cell with stopped up toilets and no showers or clean clothes does not meet the objective component); *Taylor v. Wright*, No. 20-13041, 2023 U.S. Dist. LEXIS 134110, at *11 (E.D. Mich. Apr. 19, 2023) (twenty-day stay in a dirty cell combined with a denial of clean clothes and cleaning supplies not sufficient to meet objective components), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 133155 ( E.D. Mich., Aug. 1, 2023); *Moore v. Goulet*, No. 1:22-cv-279, 2023 U.S. Dist. LEXIS 165728, at *13-16 (W.D. Mich. Aug. 21, 2023) (multiple days in a cell with sewage and flooding issues with no access to cleaning supplies does not meet the objective component), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 164679 (W.D. Mich., Sept. 15, 2023); *Chilton v. Walters*, No. 3:21 CV 1312, 2022 U.S. Dist. LEXIS 32066, at *6-10 (N.D. Ohio Feb. 23, 2022) (being placed in a cold cell in only a paper gown and without a blanket or mattress for nine days does not violate the Eighth Amendment).

Turning to Plaintiff's allegations that his cell had feces on the floor and walls and that he had to walk barefoot in the cell with dirt and feces caked to his feet, the Court accepts Plaintiff's allegations as true regarding these conditions for the purpose of ruling on the instant motion.[4] "Courts have typically found that temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test." *Brown v. Mahlman*, No. 1:22-cv-00239, 2022 U.S. Dist. LEXIS 228343, at *10 (S.D. Ohio Dec. 19, 2022) (citing *Lamb v. Howe*, 677 at 209-10).

---

[4] Plaintiff makes repeated arguments that Defendants did not produce surveillance video of the cell which would show its conditions. Because the Court accepts Plaintiff's allegations concerning the cell's conditions as true, Defendants need not produce the video.

In *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam), the Supreme Court addressed exposure to feces and reversed the lower court's entry of summary judgment. The court described the conditions as follows:

> Correctional officers confined [the inmate] in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in "'massive amounts' of feces": all over the floor, the ceiling, the window, the walls, and even "'packed inside the water faucet.'" *Taylor v. Stevens*, 946 F. 3d 211, 218 ([5th Cir.] 2019). Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage. *Id.* at 53 (footnote omitted).

*Id.* at 7-8. The court held that no reasonable correctional officer could have concluded that it was constitutionally permissible to house the plaintiff under those conditions. *Id.* at 8-9. In doing so, the court also stated, "The Fifth Circuit identified no evidence that the conditions of Taylor's confinement were compelled by necessity or exigency." *Id.* at 9.

The Court finds that the allegations by Plaintiff in this case can be distinguished from the facts alleged in *Taylor v. Rios*. First, it cannot be said that Plaintiff is alleging "'massive amounts' of feces" or raw sewage spilling across the floor as was alleged in *Taylor v. Rios*. While the conditions alleged by Plaintiff are exceedingly unpleasant, walking on floors caked in dirt and feces for ten days does not equate to the conditions at issue in *Taylor v. Rios*. Plaintiff's alleged conditions were not of the extreme or intolerably cruel sort as those found in *Taylor v. Rios*. *See Newell v. Watson*, No. 1:14-CV-304, 2016 U.S. Dist. LEXIS 41054, at *22 (E.D. Tenn. Mar. 29, 2016) (allegations that "the bedding is stained and stinking due to mold, and the inmates' underwear is only washed every two weeks" were insufficient to state an Eighth Amendment claim); *Anderson v. Chapman*, No. 3:12-cv-88 (CAR), 2013 U.S. Dist. LEXIS 118731 (M.D. Ga.

17

July 19, 2013) (recommending summary judgment on inmate's claim that he "was forced to sleep on the floor with dried urine, blood, and feces" and "lacked access to clothing, a mattress, a blanket, toilet paper, water, or showers" while housed in isolation for five days finding the allegations did not meet the objective component of an Eighth Amendment claim), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 117559 (M.D. Ga., Aug. 20, 2013).

Moreover, Plaintiff makes no allegation that he was unable to eat or drink during his time housed in the RHU or that he suffered any other physical harm as a result of the conditions. *See Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 U.S. Dist. LEXIS 7882, at *3, 5 (M.D. Tenn. Feb. 25, 2015) (three-week sewage leak with no resulting harm failed to satisfy objective component), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 22522 (M.D. Tenn. Feb. 24, 2015).

Further, while the duration of Plaintiff's exposure to the alleged conditions was ten days, four days longer than in *Taylor v. Rios*, the time period was still limited and relatively short. *Compare Pinkston v. Hall*, No. No. 5:18-cv-103-MTP, 2020 U.S. Dist. LEXIS 86763, at *43-44 (S.D. Miss. May 18, 2020) (denying summary judgment motion where plaintiff alleged that he had been in a filthy cell with vermin and dried blood, feces, and mildew covering the walls for two years and has not been given an opportunity to clean his cell).

Finally, in contrast to *Taylor v. Rios,* where the Fifth Circuit identified no evidence as to the necessity or exigency of the inmate's conditions, Defendants point to evidence of record which demonstrates the reasons Plaintiff was housed in the RHU. While Plaintiff disputes that he was involved in the violent assault on the KSP corrections officer, he does not dispute that he was housed in the RHU because he was a member of the STG which had committed the assault on the officer. Nor does he dispute that he was limited to wearing paper boxes because he expressed to

staff that was going to harm himself. The Court finds that, unlike in *Taylor v. Rios*, there was a showing of necessity or exigency for the conditions in which Plaintiff was housed.

For these reasons, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact as to the objective component of his conditions-of-confinement claim, and the Court need not address the subjective component. Therefore, the motion for summary judgment will be granted as to this claim.

V.

For the reasons set forth above, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 43) is **GRANTED**. The Court will enter a separate Judgment dismissing the action and denying all pending motions as moot.[5]

The **Clerk of Court is DIRECTED** to change the name of Defendant Sasha Primozich to Sasha Promozich Villasenor in the docket sheet.

Date: July 1, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:  Plaintiff, *pro se*
     Counsel of record
4414.010

---

[5] Plaintiff filed a motion requesting "production of entry and exit form" for the RHU cell and he also requested that evidence concerning the presence of feces in the RHU cell by admitted (DN 63). The Court need not address that motion because the parties do not dispute the dates of Plaintiff's entry or exit to the RHU or that the cell contained feces, and this motion can be denied as moot. Plaintiff also filed a motion for mediation (DN 67). Because the summary judgment will be entered for the reasons stated herein, this motion can also be denied as moot.